**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THOMAS KORB,

              Plaintiff,

v.

MAXMEDIA, INC.,                                    CASE NO. 05-74154

            Defendant.          HON. MARIANNE O. BATTANI

_____/

MAXMEDIA, INC.,                                    CASE NO. 06-11221

              Plaintiff,          HON. MARIANNE O. BATTANI

v.

MAXMEDIA WORKS LIMITED and THOMAS
KORB,

            Defendants.

_____/


**ORDER DENYING COUNTERDEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**


      Before the Court is Counterclaim Defendants Thomas Korb and Max Media Works

Ltd.'s ("MMW") Motion for Partial Summary Judgment on Counts II (False Designation of

Origin) and III (Common Law Unfair Competition and Misappropriation) of Max Media Inc.'s

("MaxMedia") Counterclaim in Case No. 05-74154.  After the Court heard oral argument,

it requested supplemental pleadings.  The parties have submitted their posthearing briefs,

which the Court has reviewed.   For the reasons that follow, the Court **DENIES**

Counterclaim Defendants' Motion for Partial Summary Judgment on Counts II and III of

MaxMedia's Counterclaim.

## I.    STATEMENT OF FACTS

Counterclaim Plaintiff MaxMedia Inc., which is located in Georgia, develops interactive marketing tools, including website design and implementation.  MaxMedia's Ex. A, Aff. Of Keehln Wheeler at ¶ 2.  MaxMedia has sold its services, continuously, under the MaxMedia trademark since 1996.  Id. at ¶ 3.  MMW, a Michigan corporation, is engaged in the business of producing interactive media websites.  Thomas Korb is the president and owner of MMW, and on November 7, 1996, the corporation became the registered, legal owner of the domain name "www.maxmedia.com."

On April 1, 2005, Keehln Wheeler, the President of MaxMedia, approached Korb to inquire whether he would be interested in selling the domain name.  Shortly thereafter, Wheeler contacted Korb to propose an employment arrangement whereby Korb would become an employee of MaxMedia.  In addition, in exchange for a $10,000 signing bonus, Korb would give permission to transfer ownership of the domain name to MaxMedia. MaxMedia's Ex. B.  The parties signed a  one-year employment agreement on May 19, 2005.  Id.  Pursuant to the agreement, Korb could receive a signing bonus of $10,000, "which is non-refundable as long as the transfer of ownership is complete." Id.  The terms further provide that after Korb received the bonus check, he "was to release the ownership of the reserved name of www.maxmedia.com from Network Solutions while giving them [sic] permission to transfer that name to MaxMeida Technologies, Inc.  This transition will take place within 10 business days following the signing of this contract." Id.

MaxMedia issued Korb a check for $10,000 dated for May 19, 2005, and Korb deposited the check into his account on May 26, 2005.  MaxMedia began using the domain

2

name "www.maxmedia.com" as soon as it issued the check, and informed its customers and potential customers of its website.  MaxMedia also used the maxmedia.com domain name to house its employee e-mail addresses, and informed its customers and potential customers of those addresses.

On September 1, 2005, MaxMedia terminated its employment contract with Korb. On September 8, 2005, MaxMedia contacted Network Solutions to transfer ownership of the domain name.  Network Solutions was unable to conduct the transfer as the domain name was still registered to MMW.  After repeated, unsuccessful attempts to contact Korb, MaxMedia filed suit in Georgia.  The Georgia lawsuit eventually was transferred to this Court; however, before the transfer occurred, Korb filed suit in this Court, alleging claims of fraudulent inducement of employment, intentional infliction of emotional distress, breach of employment contract, breach of covenant of good faith and fair dealing, and conversion and conspiracy to convert.  MaxMedia filed a counterclaim for breach of contract, false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A), common law unfair competition and misappropriation, and misappropriation and conversion.  Only the false designation of origin and common law unfair competition and misappropriation claims are at issue in this motion.  Counterclaim Defendants assert the claims fail as a matter of law because MaxMedia cannot show that it has a protectable right in the mark.  In the alternative, they assert that MaxMedia cannot show the likelihood of confusion.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of

material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).

"[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out

to the district court -- that there is an absence of evidence to  support the nonmoving

party's case."  Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving

party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao

v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of

showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his

own burden of producing in turn evidence that would support a jury verdict."  Anderson v.

Liberty Lobby Inc., 477 U.S. 242,  256 (1986).  The court must view the evidence in a light

most favorable to the nonmovant as well as draw all reasonable inferences in the

nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342

F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact

would have [the] effect of establishing or refuting one of the essential elements of the cause

4

of action or defense asserted by the parties, and would necessarily affect [the] application

of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v.

Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law

Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant

must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party. If the
> [nonmovant's] evidence is merely colorable, or is not significantly probative,
> summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record

taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"

Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The evidence itself need not be the sort admissible at trial. Tinsley v. General

Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more

than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032,

1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-

movant is not sufficient; there must be sufficient evidence upon which a jury could

reasonably find for the non-movant. Anderson, 477 U.S. at 252.

## III. ANALYSIS

Max Media's counterclaims of false designation of origin in violation of § 43(a) of the

Lanham Act, 15 U.S.C. § 1125 (a)(1)(A),[1] and common law unfair competition and

---

[1]Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) states:

misappropriation are governed by the same standards.  Homeowners Group, Inc., v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1103 (6th Cir. 1991); Goscicki, v. Custom Brass & Copper Specialities, Inc., 229 F.Supp.2d 743, 756 (E.D.Mich. 2002).  Those standards are established by federal case law.

To make out a claim for infringement under 15 U.S.C. § 1125(a), the plaintiff must show: (1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services."  Homeowners Group, Inc., 931 F.2d at 1105.  Korb and MaxMedia challenge MaxMedia's ability to show a genuine issue of material fact as to all of these elements.[2]

---

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -

>  (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act . . . .

[2]Counterdefendants also raise a laches defense.  Because MaxMedia's claims arise out of the September 2005, recapture of the domain, laches is inapplicable.

6

A.  OWNERSHIP OF THE ALLEGED TRADEMARK

The first element to be established under the Lanham Act is ownership of a specific service mark in connection with specific services.  Homeowners Group, 931 F.2d at 1105. In arguing that MaxMedia cannot, as a matter of law, show ownership of the mark, Korb and MMW focus on incorporation dates of MMW and MaxMeida, the various corporate names used by MaxMedia, as well as the deposition testimony of Keehln Wheeler.  The arguments fail to demonstrate that Counterdefendants' ownership of the trademark is beyond dispute.

MaxMedia was incorporated as Max Media Technologies, Inc. on December 17, 1996; MMW was incorporated November 7, 1996.  Further, it is evident from the record that MaxMedia has evolved through several name changes since its date of incorporation, and did not change its name to MaxMedia Inc. until September 16, 2005, two weeks after it fired Korb.

Nevertheless, Counterdefendants' view that registration of the domain name and earlier date of incorporation substantiate ownership as a matter of law ignores a fundamental precept of trademark law:  Ownership of a mark is not acquired by registration. Ownership rights flow only from prior appropriation and actual use in the market. Homeowners Group, 931 F.2d at 1105 (citation omitted).  MaxMedia claims ownership under valid and enforceable common law rights by virtue of its use and promotion of the mark. Allard Enter., Inc. v. Advanced Programming Res. Inc., 249 F.3d 564, 572 (6th Cir. 2000).  The resolution of those ownership rights to "www.maxmedia.com" turns on the resolution of the parties' breach of contract claims.

Wheeler's testimony that he did not own the trademark on the words maxmedia or

7

have rights in the trademark fails to resolve the factual disputes or render them immaterial. MaxMedia is entitled to all reasonable inferences, and Wheeler's  testimony arguably reflects his understanding that he was not the owner of the registered domain name. Finally, the ever evolving first use asserted by the parties–that Wheeler used the maxmedia mark before he incorporated MaxMedia, and Korb's use as early as 1993–creates questions of credibility, which may not be resolved on summary judgment.  In addition, the evidence provided by the parties to support their positions does not necessarily establish their characterizations.  See Ex. B to MaxMedia's Surreply; Courterdefendants' Post Hearing Brief, Exs. A, B.

Finally, the Court observes that even if Korb establishes initial priority, genuine issues of material fact exist as to whether Korb abandoned the trademark when he signed the employment contract with MaxMedia.  Abandonment "leaves no room for doubt or speculation" that the "use of the mark was discontinued with intent to abandon it."  Miller Brewing Co. v. Oland's Breweries Ltd., 189 U.S.P.Q. 481, 488 (T.T.A.B. 1975), aff'd 548 F.2d 359 (1976).    Given the disputed facts surrounding the contract, the issue of ownership is not appropriate for resolution through summary judgment.

### B. Continuous Use of the Mark

MaxMedia contests Counterdefendants' assertion that because MaxMedia has used the mark in conjunction with other words its use has not been continuous.  MaxMedia has added the words design and technologies to the maxmedia mark,  but it contends that those terms have always been used in a subordinate manner.  In assessing whether Counterdefendants have shown as a matter of law that MaxMedia's use of the mark has not been continuous, the Court notes that the mark must be viewed in its entirety and in

8

context.  Homeowners Group, 931 F.2d at 1109.

Although the addition of words can be sufficient to distinguish marks, additional words do not necessarily diminish confusingly similar marks. In re Hearst Corp., 982 F.2d 493 (Fed. Cir. 1992) (finding the addition of Girl in Varga girl sufficient to distinguish Varga for identical goods). Consequently, Counterdefendants have failed to advance sufficient legal basis for finding as a matter of law that the addition of design or technologies to the corporate name means MaxMedia did not continuously use the mark.  The import of the variations on the mark maxmedia cannot be resolved on the pleadings before the Court. Moreover, the issue of use must be placed in the context of the claims advanced by MaxMedia, including its assertion that Counterdefendants' recapture of the domain name violated its trademark rights.  Accordingly, the Court declines to find for Counterdefendants as a matter of law on the issue of continuous use.

### C. INHERENTLY DISTINCTIVENESS OR SECONDARY MEANING

The strength of a federally unregistered trademark and the degree of protection to which it is entitled is evaluated under the "distinctiveness" framework.  Two Pesos, Inc. V. Taco Cabana, inc., 505 U.S. 763, 768 (1992).  "Inherent distinctiveness is determined by whether the mark is 'so unique, unusual or unexpected in the market that one can assume without proof that it will automatically be perceived by customers as an indicia of origin.'" Homeowners Group, 931 F.2d at 1105 (citing J. McCarthy, Trademarks and Unfair Competitions, 16:5 at 733 (2d ed. 1984)).  "Marks are classified, in ascending order of distinctiveness, as 1) generic; 2) descriptive; 3) suggestive; or 4) arbitrary or fanciful." North American Graphics, Inc. v. North American Graphics of US, 1997 U.S. Dist. LEXIS 8107, *7 (S.D.N.Y.1997).  In Solventol Chemical Products v. Langfield, 134 F.2d 899 (6th

9

Cir. 1943), the Sixth Circuit held that trademarks at issue must be broken down into their component parts in order to determine their appropriate class in the trademark spectrum. See also Induct-O-Matic Corp. v. Inductotherm Corp., 747 F.2d 358, 362-63 (6th Cir. 1984).

According to Counterdefendants, MaxMedia cannot establish that its mark, which they deem descriptive, has acquired a secondary meaning. Id. A mark is descriptive if it conveys information about the product, its qualities, ingredients, or characteristics, such as its purpose, use, size, or merit. DiGidio v. West Group Corp., 355 F.3d 506, 510 (6th Cir. 2004). A mark acquires secondary meaning if, because of association with a particular product or firm over a period of time, it has come to stand in the minds of the public as a name or identification for that product or firm. Two Pesos, 505 U.S. 766 n.4.

Here, MaxMedia does not assert that the disputed mark is descriptive. Rather, it asserts that it is entitled to protection as a suggestive mark because it suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. There is no dispute that a suggestive term can be protected without proof of a secondary meaning.

The Court agrees with MaxMedia. Neither the term media or max describes the product or ingredients, so the mark appears to be more suggestive than descriptive. MaxMedia provides "cutting edge interactive tools for its clients, including web design and implementation." Resp. Brief at 10. Therefore, MaxMedia has no duty to show the inherent distinctiveness, that is that the purchasing public actually identifies the words maxmedia with the single source Max Media Technologies/d/b/a Max Media Inc. in Atlanta. Accordingly, Korb and MMW have failed to show as a matter of law that the mark is descriptive. Therefore, they are not entitled to summary judgment on this ground.

10

**D.  LIKELIHOOD OF CONFUSION**

Trademarks protect the public from confusion by accurately indicating the source of a product.  They preserve a producer's good will "in order that the purchasing public may not be enticed into buying A's product when it wants B's product."  T & T Mfg. Co. v. A.T. Cross Co., 587 F.2d 533, 538 (1st Cir.1978)).  Protection is broad.  See Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983) ("The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement.").  "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc., 64 U.S.P.Q.2d 1039, 1041 (S.D.N.Y.2002) (citation omitted).

In assessing the likelihood of confusion, the Court assesses whether Counterclaim Defendants' use of the MaxMedia mark and the "www.maxmedia.com" domain name is likely to cause confusion, mistake, or deception among consumers.  In making this assessment, the Sixth Circuit has identified eight relevant factors which must be examined and weighed. Daddy's, 109 F.3d at 280.  These include:  strength of the senior mark; relatedness of the goods or services; similarity of the marks; evidence of actual confusion; marketing channels used; likely degree of purchaser care; the intent of the defendant in selecting the mark; and the likelihood of expansion of the product line. Id.  These factors guide a court in determining the likelihood of confusion.  Id.  The factors imply no mathematical precision.  Id.  Hence, a plaintiff "need not show  all, or even most, of the factors listed are present in any particular case to be successful." R.L. Polk & Co., v. INFOUSA, Inc., 230 F.Supp.2d 780, 784 (E.D. Mich. 2002).  The Court addresses the

11

factors identified by the parties as relevant to their dispute below.

### 1.    Strength of the mark

The strength of a mark is measured by it distinctiveness.  Consumers are more likely to be confused when a distinct mark is infringed.  <u>Daddy's</u>, 109 F.3d at 280.  The courts look at two factors in assessing distinctiveness: how inherently distinctive it is and how distinctive it is in the marketplace.  <u>Gray v. Meijer, Inc.</u>, 295 F.3d 641 (6th Cir. 2002) .  The Court already addressed the first consideration.  Consequently it turns its attention to the second.

According to Korb and MMW, the word "maxmedia" is currently used by at least seventeen other companies in the same line of business as MaxMedia.   The location of the businesses cited by Counterdefendants range from New York, Colorado, Wisconsin, California, to foreign countries. Counterdefendants assert that domain names in use by companies in the same line of business as plaintiff include: "www.maxmediamw.com"; "www.maxmediaweb.com";   "www.maxmediaus.com";   and   "www.maxms.com". Counterdefendants further assert that an Internet search using the Google Search Engine, shows over 430 uses of the word on the Internet in connection with businesses or products.

Although the prevalent use by third-parties suggests this factor favors granting Counterdefendants' motion, third-party use alone is not sufficient.  <u>Daddy's</u>, 109 F.3d at 281 (citation omitted). The marks must be in actual use and the impact of that use of the market is part of the analysis.  <u>Scarves by Vera, Inc. v. Todo Imports Ltd.</u>, 544 F.2d 1167, 1173 (2d Cir. 1976) (observing that the relevance of third party use depends on actual use and promotion as well as recognition by consumers).  Because Korb and MMW have not

12

met their burden, the Court finds that this factor does not favor the relief requested.

### 2.   Similarity of the marks/Relatedness of goods and services

Under the law of the Sixth Circuit, a sliding scale analysis of these factors determines how important they are to the likelihood of confusion.  The considerations range from:

> (1) cases in which the [goods] of the parties are in direct competition, "in which case confusion is likely if the marks are sufficiently similar"; (2) cases in which the "[g]oods are somewhat related but not competitive, so that the likelihood of confusion may or may not result depending on other factors"; and (3) cases in which the "[goods] are totally unrelated, in which case confusion is unlikely.

Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1118 (6th Cir. 1996) (quoting Homeowners, 931 F.2d at 1108).  Whether the services are related depends not on coexistence in the same broad industry, but on whether they are connected in the mind of a purchaser.  Daddy's, 109 F.3d at 282-83 (quoting Homeowners, 931 F.2d at 1109).

Here, where the marks used by the parties were identical after the employment contract was signed, confusion seems likely, provided the services compete directly. Counterdefendants admit their services are somewhat similar, but claim distinctions exist because MMW's product is less advanced and sophisticated, and attractive to a different class of clients.  In sum, they assert that the level of services provided distinguishes the two business:   MaxMedia specializes in digital communications; Korb and MMW produced interactive media web sites.

It cannot be disputed that the parties are in the same general field. Given the similarity of the marks, the distinctions identified by Counterdefendants do not provide a

13

basis for the Court to find this factor favors them as a matter of law.  See Victoria's Cyber Secret LP v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("[t]he taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law").

### 3.  Marketing channels

A court must determine whether the marketing approaches employed by each party resemble each other.  Daddy's, 109 F.3d 275 at 286.  Here, Korb and MMW assert that there is no overlap because MMW ceased operations the day Korb became employed with MaxMedia.  Consequently, customers are not being solicited.  Although the parties operated in different areas--MMW operated in southeast Michigan, MaxMedia operates nationally, MaxMedia does have clients in Michiganl.

A closer look at the marketing channels reveals that MaxMedia's mark and services are promoted nationally via its web sites, point of sale advertising, brochures, catalogs, advertisements, and other national media.  MMW was promoted primarily through word of mouth.  However, the Court must assess the weight of this factor prior to and after Korb was terminated.  From May 19, 2005 until September 1, 2005, the domain name "www.maxmedia.com" was "pointed" at MaxMedia's website. Upon Korb's termination from MaxMedia, he redirected the pointing of that domain name from MaxMedia's web address. The domain name has lain dormant and not been used for any purpose.  If an Internet user were to go to "www.maxmedia.com", he would find a blank screen.

In order for a court to determine whether the use of the Internet is evidence that parties utilize similar marketing channels, it must consider the following: "(1) whether both

14

parties use the Web as a *substantial* marketing and advertising channel, (2) whether the parties' marks are utilized in conjunction with Web-based products, and (3) whether the parties' marketing channels overlap in any other way." R.L. Polk & Co., 230 F.Supp.2d 780 at 791 (quoting Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d, 623, 637).  The facts do not lend themselves to a finding that as a matter of law for either party.

Korb is not marketing any products, but Korb's control and use of the "www.maxmedia.com" domain name may be "classically competitive" to MaxMedia. MaxMedia asserts that this situation impedes its distribution of services because consumers are likely to believe MaxMedia has no website and direct their anger and frustration against MaxMedia.  In Planned Parenthood Fed'n of Am. v. Bucci, No. 97-0629, 1997 WL 133113 at *8 (S.D.N.Y. Mar. 24, 1997), the court observed:

> Prospective users of plaintiff's services who mistakenly access defendant's web site may fail to continue to search for plaintiff's own home page, due to anger, frustration, or the belief that plaintiff's home page does not exist . . . .  Therefore, defendant's action in appropriating plaintiff's mark has a connection to plaintiff's distribution of its services . . . .  In that way, defendant's use is classically competitive: he has taken plaintiff's mark as his own in order to purvey his Internet services - his web site - to an audience intending to access plaintiff's services.

Id. at *4-6.  See also PACCAR Inc. v. Telescan Technologies, L.L.C., 319 F.3d 243, 253 (6th Cir. 2003) (acknowledging initial interest confusion as a basis for trademark infringement).  Based on initial interest confusion, the Court declines to find this factor favors Counterdefendants as a matter of law.

### 4.    Intent

MaxMedia claims Korb and MMW are acting in bad faith by refusing to transfer ownership of the "www.maxmedia.com" domain name.  Their continued control and use of

15

the domain name knowingly harms MaxMedia and trades upon the goodwill MaxMedia has labored to establish in its MaxMedia mark.  Korb's position is that he did not choose the domain name with the intent of causing confusion misses the point.  His intent must be measured not at the time he registered the domain name, but at the time he failed to transfer it.  Again, resolution of this factor is intertwined with the parties' breach of contract claims.

### 5.  Degree of purchaser care

The parties disagree as to whether MaxMedia's customers' level of sophistication shows as a matter of law that they will not be confused by Korb and MMW's use of the maxmedia mark.  Korb asserts in an affidavit that MaxMedia's customers are highly sophisticated because they spend a great deal of money on the service.  The Court notes that there are no facts provided in support of his assertions, and they do not constitute evidence.  Nor does the naming of three customers, including Coke, GM, satisfy Counterdefendants' burden on summary judgment.

Wheeler counters Korb's assertions with an affidavit of his own that MaxMedia provides services to numerous customers across all income and sophistication levels. Case law from this circuit holds that when the products and marks are identical the degree of sophistication of the buyers cannot be relied upon to prevent confusion.  Champions Golf Club, Inc., 78 F.3d at 1112.  Again, given the pleadings before it, the Court cannot reach a finding on this factor as a matter of law.

### 6.  Actual Confusion

Finally, Korb and MMW point to the lack of evidence of actual confusion as a basis

16

for awarding them summary judgment.  Governing case law does not support their position.

"Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is

rarely significant, and the factor of actual confusion 'is weighted heavily only when there

is evidence of past confusion, or perhaps, when the particular circumstances indicate such

evidence should have been available.'"  Daddy's, 109 F.3d at 284 (quoting Bandag, Inc.

v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 914 (Fed.Cir. 1984)).

Nor is the Court persuaded that Counterdefendants are entitled to summary

judgment based on their contention that MaxMedia's business has increased.  The Court

declines to equate an increase in business with no lost business.  An increase in business

does not demonstrate that no potential customer was lost due to actual confusion.

## IV.    CONCLUSION

In accordance with the Court's opinion, Counterdefendants' motion is **DENIED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: March 9, 2007

17

## CERTIFICATE OF SERVICE

A copy of this Order was hand-delivered and electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt

Deputy Clerk